999 F.2d 547
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Phillip W. HALL, Sr., Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 92-7140.
 United States Court of Appeals, Tenth Circuit.
 June 28, 1993.
 
 1
 Before SEYMOUR and TACHA, Circuit Judges, and ROGERS,* Senior District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 RICHARD D. ROGERS, District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 5
 Claimant Phillip W. Hall Sr. appeals an order of the district court affirming the decision of the Secretary of Health and Human Services denying his request for social security disability benefits and for supplemental security income disability benefits. On appeal, Claimant contends that (1) the findings of the Secretary were not supported by substantial evidence, and (2) the administrative law judge based his decision on improper hypothetical questions to the vocational expert.
 
 
 6
 Claimant was twenty-three years old at the time he filed for social security disability benefits on March 16, 1990. The application was denied initially and on reconsideration. Claimant requested, and was granted, a hearing before an administrative law judge (ALJ) on November 7, 1990. Claimant claims disability from May 10, 1987, due to a back injury he sustained while lifting an ice cooler at his job as a clerk in a convenience store.
 
 
 7
 Claimant has a high school education. He has held numerous jobs in the past with the most recent being as a night clerk in a convenience store, as a buffer in a tire retreading shop, and as a thread clipper in a clothing factory. It appears that he has never held any one job for longer than nine months. R.Vol. II at 65.
 
 
 8
 The ALJ denied claimant's application for benefits, finding that claimant was able to return to his previous light work activity as a thread cutter or as a clerk. The Appeals Council declined to review the ALJ's decision. The decision thus became the final decision of the Secretary. Claimant filed for review and the district court affirmed. Claimant appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 9
 Our review of the Secretary's decision is limited to determining whether the decision is supported by substantial evidence and "whether the Secretary applied correct legal standards." Pacheco v. Sullivan, 931 F.2d 695, 696 (10th Cir.1991). In order to determine whether the Secretary's decision is supported by substantial evidence, we must meticulously examine the record. However, we may neither reweigh the evidence nor substitute our discretion for that of the Secretary. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir.1991). The claimant has the burden of proving a disability that prevents him or her from engaging in prior work activity. Once such a showing is made, the burden shifts to the Secretary to show the claimant can perform jobs existing in the national economy. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir.1989).
 
 
 10
 In order to determine whether a claimant is under a disability, the Secretary applies a five-step process. 20 C.F.R. §§ 404.1520, 416.920; see Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.1988) (providing an in-depth discussion of the five steps). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir.1989).
 
 
 11
 Following a hearing on November 7, 1990, the ALJ found that claimant had "severe impairments consisting of obesity and a defect at the pars interarticularis, L5," but that claimant's impairments are not equal to one listed in Appendix 1, Subpart P, Regulations No. 4. R.Vol. II at 16.[1] The ALJ further found that, although claimant was restricted from jobs at which he would have to lift and carry in excess of twenty pounds, he had the residual functional capacity for sedentary and light work and therefore could return to his past relevant work as a clerk or a thread cutter, or as a bench worker, inspector, or clerical worker as suggested by the vocational expert. Id.
 
 
 12
 Here, the ALJ's determination that claimant is not disabled is well supported by the evidence. Although claimant contends that his back injury occurred on May 10, 1987, it appears that he continued working at the convenience store until May 22, 1987. At this time, he sought medical treatment from Dr. James Morris in Atlanta, Texas. The record indicates that claimant was referred by Dr. Morris to Dr. Greg Smolarz in Texarkana, Texas. Medical records from Dr. Smolarz indicate that claimant continued to complain of back pain radiating into his left leg. R.Vol. II at 119. He reported to Dr. Smolarz that he had sought treatment from a chiropractor which had not helped. Id. Although Dr. Smolarz noted some tenderness in claimant's lower left back area, claimant displayed no motor, reflex, or sensory problems. Id.
 
 
 13
 Claimant continued to complain of pain despite Dr. Smolarz's conservative therapy and finally requested a second opinion. On referral from Dr. Smolarz, on August 7, 1987, claimant entered treatment with Dr. A.E. Dean, Jr., an orthopedic surgeon. Following x-rays, Dr. Dean initially diagnosed "[s]pondylolisis, L5, with possibly some nerve root irritation." Id. at 116.
 
 
 14
 In October 1987, Dr. Dean reported that the results of a bone scan were negative and ordered a CT scan, providing the table could accommodate claimant's weight. Id. at 115. He discontinued claimant's back brace and ordered him to walk and do back exercises. He continued claimant's muscle relaxants. Id.
 
 
 15
 Dr. Dean's notes in November 1987, indicate that they were able to do the CT scan, and that it showed no abnormalities. Id. at 114. Dr. Dean opined that the source of claimant's alleged pain could be "a stress fracture or just a spondylolysis."[2] Id. He noted that he could do nothing further for claimant except possibly a surgery which he felt would be unsuccessful due to claimant's excessive weight. Id.
 
 
 16
 In December 1987, Dr. Dean again x-rayed claimant's thoracic spine which showed no abnormalities. Id. at 113. He recommended that claimant take extra strength Tylenol or Advil, and walk and do his back exercises. Id. at 113. In February 1988, Dr. Dean opined that claimant was capable of working and recommended that claimant "try to find some type of gainful employment." Id. at 111.
 
 
 17
 Dr. E.C. Simonton examined claimant at the request of the Secretary. Dr. Simonton noted that x-rays of claimant's lumbar spine revealed no evidence of fracture, dislocation, or anomaly. Id. at 124. He further noted that there was no evidence of joint narrowing or arthritic changes and that claimant's motion restrictions were voluntary. Id.
 
 
 18
 Claimant argues that, in considering his allegations of disabling pain, the ALJ did not properly apply the standards articulated in Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir.1987). On the contrary, it appears clear that the ALJ did consider the Luna standards, but determined that there was little, if any, objective medical evidence to support claimant's allegations of disabling back pain. Claimant testified that, at the time of the hearing, he was not receiving any medical treatment for his back problem. R.Vol. II at 33. He stated that he spends his days caring for his three children, doing laundry, keeping house, taking the children to school, driving the car, and visiting his father. Id. at 33-35. The record also indicates that claimant was not taking any medication for pain stronger than Tylenol and Advil.
 
 
 19
 The record further indicates that none of claimant's treating physicians determined that claimant's pain was disabling. On the contrary, Dr. Dean noted several times, as part of claimant's treatment recommendations, that he should seek gainful employment. Id. at 111, 112, 113. He noted that claimant should avoid "a lot of heavy lifting or manual labor and such, but he can work." Id. at 111.
 
 
 20
 The ALJ did not find claimant's allegations of pain, movement restriction, and leg numbness to be credible. See Ellison v. Sullivan, 929 F.2d 534, 537 (10th Cir.1990) ("Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the medical evidence."). We give the credibility determinations of the ALJ great deference. Williams, 844 F.2d at 755. Our review of the record in this case affords us no basis for disturbing the ALJ's determinations.
 
 
 21
 Claimant also argues that the ALJ failed to adequately develop the record where claimant was represented by a paralegal. The ALJ has an affirmative duty to "fully and fairly develop the record regardless of whether the applicant is represented by an attorney or a paralegal." Baker v. Bowen, 886 F.2d 289, 292 n. 1 (10th Cir.1989). In determining whether the ALJ met the heightened obligation to fully develop the record in a case where a claimant is unrepresented, we ask whether the ALJ asked sufficient questions to determine "(1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." Musgrave v. Sullivan, 966 F.2d 1371, 1375 (10th Cir.1992).
 
 
 22
 Claimant contends that the ALJ failed in his duty "to ask any probing questions or to ask any material questions." We do not agree. The ALJ asked questions of claimant regarding his claims that his legs collapse, R.Vol. II at 32, his ability to sit, stand or walk, id. at 33, 35, and his daily activities, id. at 33-34. He also asked claimant questions regarding his pain and his current medical treatment. Id. at 33. Claimant's paralegal representative then questioned claimant about his ability to manage his three-year-old child, and was given an opportunity to explore any other areas with claimant. Id. at 36. Applying the Musgrave standards, we conclude that the ALJ met his burden of fully and fairly developing the record in this case.
 
 
 23
 Next, claimant argues that the testimony of the vocational expert was based on a "narrow and misleading" hypothetical posed by the ALJ. Appellant's Br. at 13. However, a claimant has the burden to establish his or her disability, Ray v. Bowen, 865 F.2d 222, 224 (10th Cir.1989), and because claimant did not establish his disability, the burden did not shift to the Secretary to show that there were jobs in the national economy that claimant could perform. See Turner v. Heckler, 754 F.2d 326, 328 (10th Cir.1985) (burden shifts to Secretary only upon showing by claimant that he can no longer engage in prior work activities). Therefore, the ALJ was under no obligation to elicit the testimony of a vocational expert. See Walden v. Bowen, 813 F.2d 1047, 1049 (10th Cir.1987) (per curiam) (vocational expert's evaluation not necessary where claimant failed to make prima facie showing that she could not return to her past relevant work).
 
 
 24
 However, insofar as the ALJ relied on the testimony of the vocational expert, we will address claimant's arguments. Claimant contends that the hypothetical was misleading because the ALJ's questions were based on the assumption that claimant could return to his past relevant light work and that he could perform sedentary work, and that the questions did not include claimant's nonexertional impairments of "pain, restricted movements and obesity."[3] Appellant's Br. at 14. " '[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.' " Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir.1991) (quoting Ekeland v. Bowen, 899 F.2d 719, 722 (8th Cir.1990)). However, in forming a hypothetical to a vocational expert, the ALJ need only include impairments if the record contains substantial evidence to support their inclusion. See Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir.1990).
 
 
 25
 Initially the ALJ established that the vocational expert had been present for all of the testimony. R.Vol. II at 37. Next, the ALJ asked the expert to summarize the factors he would take into consideration in evaluating claimant's vocational capacity. Id. at 37-39. The ALJ then posed the following questions to the vocational expert:
 
 
 26
 Assuming that I should find from the evidence of record and from the testimony as well as the medical evidence that Mr. Hall would be able to perform sedentary as defined in the regulations, are there sedentary that he would be able to perform?
 
 
 27
 ....
 
 
 28
 Assuming that he would be able to perform light work as defined in the regulations, are there light jobs he would be able to perform?
 
 
 29
 Id. at 39, 40.
 
 
 30
 Claimant's representative at the hearing was only able to elicit favorable testimony from the vocational expert by asking the expert to assume impairments that the ALJ properly deemed unsubstantiated. Id. at 40-42. These opinions, based on unsubstantiated assumptions, are not binding on the ALJ. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir.1993). We hold, therefore, that it was proper for the ALJ to limit the hypothetical questions to those impairments which were actually supported in the record. See, e.g., Jordan v. Heckler, 835 F.2d 1314, 1316 (10th Cir.1987) (ALJ's failure to include complaints of pain in hypothetical was not inappropriate as there was not sufficient evidence that pain interfered with claimant's ability to work).
 
 
 31
 Claimant urges this court to overturn its decision in Diaz v. Secretary of Health & Human Services, 898 F.2d 774 (10th Cir.1990), as illustrative of this court's misunderstanding of social security procedures involved in the use of vocational expert testimony in disability cases. In Diaz, this court held that any error in the hypothetical question posed to the vocational expert had minimal effect because the expert was present during the hearing and was aware of all of the claimant's disability claims. Id. at 777. This is not in conflict with any current circuit decisions requiring that the hypothetical questions posed to the vocational expert be reflective of all impairments a claimant is found to actually have. See Gay, 986 F.2d at 1341 n. 3.
 
 
 32
 The decision of the Secretary that claimant is not disabled within the meaning of the Social Security Act is supported by substantial evidence. Therefore, the judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.
 
 
 
 *
 Honorable Richard D. Rogers, United States District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Although claimant is extremely overweight, 318 pounds, he stated that he had always been overweight and that his obesity was not a claimed impairment. R.Vol. II at 60. He presented no objective medical evidence regarding the effect of his obesity on his ability to engage in work activities. Consequently, his argument that the ALJ failed to adequately consider his obesity as disabling is without merit
 
 
 [2]
 Spondylolysis is a breaking down of a vertebral structure
 
 
 [3]
 As previously noted, claimant failed to raise obesity as an impairment which prevents him from working