54 F.3d 787
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Cheryl JASON, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
[1] Defendant-Appellee.
 No. 94-5138.
(D.C. No. 92-C-1170-B)
 United States Court of Appeals, Tenth Circuit.
 May 10, 1995.
 
 Before HENRY, McKAY, and LOGAN, Circuit Judges.
 
 ORDER AND JUDGMENT[2]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Cheryl Jason appeals from a district court order affirming the decision of the Secretary denying her application for social security benefits. The Secretary found that despite a severe impairment associated with neck, arm, and leg pain and two herniated cervical disks, Ms. Jason could return to her past relevant work as a receptionist and, therefore, was not disabled pursuant to step four of the controlling sequential analysis. See generally Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.1988)(detailing five-step analysis set out in 20 C.F.R. 404.1520 & 416.920). We closely examine the record as a whole to determine whether the Secretary's decision is supported by substantial evidence and adheres to applicable legal standards. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir.1994). For the reasons that follow, we reverse and remand for further consideration by the Secretary.
 
 
 3
 The findings of the administrative law judge (ALJ) acknowledge Ms. Jason's significant functional impairment with respect to several work-related activities: (1) inability to sit or walk more than thirty minutes without having to rest or change position; (2) inability to stand for more than one hour without having to rest or change position; (3) ability to lift and carry no more than twenty pounds; (4) ability to only infrequently crawl, and occasionally bend, squat, climb, and reach; and (5) a total exclusion against unprotected heights. R. Vol. II at 13, 19, 25. Aside from these specific limitations, however, the ALJ found that Ms. Jason generally retained a residual functional capacity (RFC) for light work. Id. Finally, with respect to Ms. Jason's allegations of pain, the ALJ "recognize[d] that [she] may experience some degree of pain and discomfort," id. at 22, but found that it would "not act to further limit or reduce [her] residual functional capacity assessment," id. at 23.
 
 
 4
 The ALJ incorporated the above findings into a hypothetical question posed to the vocational expert at Ms. Jason's hearing. Id. at 63-65. In response, the expert opined that the capacities and restrictions recited by the ALJ would not preclude Ms. Jason's return to her past work as a receptionist. Id. at 65. The ALJ relied on this particular opinion to conclude that Ms. Jason was not disabled. Id. at 24-25, 26.
 
 
 5
 On appeal, Ms. Jason challenges the sufficiency of the evidence supporting this determination of nondisability in a number of respects. With regard to her basic RFC, and the additional exertional and nonexertional limitations thereon, we conclude that substantial evidence in the record supports the challenged findings of the ALJ--with one critical caveat noted below in connection with our assessment of the evidence relating to Ms. Jason's cervical range of motion.
 
 
 6
 More specifically, Ms. Jason argues that the ALJ erred in finding her capable of performing a sedentary job despite her recognized need to alternate between sitting and standing. She argues that Social Security Ruling (SSR) 83-12 "eliminates the possibility that [she] could perform alternate sit/stand work." Appellant's Brief at 13. This argument is meritless. While the cited ruling does acknowledge that an individual with such a limitation "is not functionally capable of doing ... the prolonged sitting contemplated in the definition of sedentary work," it also notes that "[t]here are some jobs ... in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, ... she would not be found disabled." Soc. Sec. Rep. Serv., Rulings 1983-1991, at 36, 39-40 (West 1992). The ruling further states that "[i]n cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base." Id. at 40; see, e.g., Ragland v. Shalala, 992 F.2d 1056, 1059 n. 4 (10th Cir.1993). Accordingly, the ALJ's reliance on the vocational expert to clarify the effect of Ms. Jason's sit/stand limitations on her ability to work as a receptionist is precisely what the ruling contemplates.
 
 
 7
 We are much more troubled by the ALJ's asserted failure to comply with SSR 82-62, which specifies the responsibilities of the ALJ at step four of the sequential disability analysis. Once the claimant's RFC is established, the ALJ must develop an adequate factual record regarding the pertinent physical and mental demands of the claimant's past relevant work:
 
 
 8
 The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.
 
 
 9
 ...
 
 
 10
 .. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate.
 
 
 11
 Soc. Sec. Rep. Serv., Rulings 1975-1982, at 809, 812 (West 1983). The ALJ must then make specific factual findings detailing how these work demands mesh with the claimant's particular exertional and nonexertional limitations:
 
 
 12
 In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
 
 
 13
 1. A finding of fact as to the individual's RFC.
 
 
 14
 2. A finding of fact as to the physical and mental demands of the past job/occupation.
 
 
 15
 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.
 
 
 16
 Id. at 813. This court has recognized the importance of these interrelated duties of factual inquiry, detailed specification, and explicit comparison on a number of occasions. See, e.g., Washington, 37 F.3d at 1442; Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir.1993).
 
 
 17
 Here, the vocational expert opined, and the ALJ accordingly concluded, that Ms. Jason could perform the work of a receptionist--as that job is customarily performed, not necessarily as Ms. Jason described her particular past work.[3] R. Vol. II at 65. However, the ALJ did not conduct any inquiry into, much less make any findings specifying, the pertinent customary demands of this occupation,[4] and, consequently, could not compare such demands with Ms. Jason's recognized impairments. Indeed, even the ALJ's (quite limited) inquiry into the physical requirements of Ms. Jason's particular past experience was clearly inadequate, as it failed to include any reference whatsoever to the permissibility of repeated sit/stand adjustments. Id. at 44-45 (examination of Ms. Jason), 102 (claimant's work history report); see also id. at 24 (recitation of work requirements in ALJ's decision).
 
 
 18
 Ordinarily, such an omission would constitute reversible error. Cf., e.g., Washington, 37 F.3d at 1442-43; Henrie, 13 F.3d at 361. There is a potentially ameliorating circumstance present here, however. Unlike any of the step-four decisions cited above or in the parties' briefs, this case includes--indeed ultimately turns on--a vocational expert's opinion that the claimant could meet the demands of a past occupation. See generally Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir.1992)(noting such testimony generally does not come into play until step five, citing Walden v. Bowen, 813 F.2d 1047, 1049 (10th Cir.1987)). Similar opinion testimony is routinely accepted as substantial evidence of nondisability in the step-five context, which suggests the possibility that, despite the ALJ's noncompliance with SSR 82-62, the result he reached might nevertheless properly stand.
 
 
 19
 On the other hand, while SSR 82-62, considered together with the related SSR 82-61, indicates that a vocational expert may supply information at step four regarding the demands of various occupations, see Soc. Sec. Rep. Serv., Rulings 1975-1983, at 811-12 & 838, nowhere does either ruling suggest that an expert may assume the ALJ's ultimate responsibility for determining whether those demands are within the claimant's capacities. Moreover, allowing the expert to do so would effectively remove the critical comparative assessment involved from judicial review, at least where, as here, the record contains only the expert's conclusory response to a typical hypothetical inquiry: "Assuming all of the [limitations found], ... could the claimant return to any past relevant work ... as that work is customarily performed?" R. Vol. II at 65. These criticisms hold much force here, though we must acknowledge that they could be voiced as well in the typical step-five case, where, as already noted, the same procedure is routinely followed.
 
 
 20
 While this difficult issue is both troubling and important, it has not been briefed adequately by the parties and, ultimately, is not necessary to our disposition of this case, which we reverse and remand on the basis of another, firmly established, legal error. Nevertheless, we include the above discussion as an encouragement for the Secretary to insist on adherence to the certainly preferable analytical procedure outlined in SSR 82-62 and enforced in our prior cases.
 
 
 21
 That brings us to the dispositive issue in the appeal. Virtually all of the pertinent medical records, including the notes of the treating physician, the report of the agency's consulting physician, and the RFC assessment forms of the medical reviewers,[5] indicate that the structural deficiencies in Ms. Jason's cervical spine limit the range of motion of her neck and head. The degree of restriction present on any particular day varies from "slight" or "just less than full [motion]," R. Vol. II at 163, 166, 192, to "some," "moderate," or "50%," id. at 162, 173, 176, 179, to "significant" or "dramatically limited," id. at 161, 165. Despite this overwhelming evidence, the ALJ did not include any reference to this physical limitation in his hypothetical to the vocational expert. Moreover, the expert went on to state that such a limitation would "change [his] response to the [hypothetical] question" posed by the ALJ, because "[t]he limited mobility of the neck ... would be a significant factor, that would be required on [the receptionist job]," id. at 66. In light of this uncontroverted evidence, we cannot say that the record developed thus far would support a finding that Ms. Jason is able to return to her past relevant work. As the ultimate resolution of this case is far from clear, a remand for further proceedings is appropriate.
 
 
 22
 The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED, and the cause is REMANDED to the district court with directions to remand, in turn, to the Commissioner for further proceedings consistent with this order and judgment.
 
 
 
 [1]
 Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. Pursuant to Fed. R.App. P. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision
 
 
 [2]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [3]
 Past relevant work consists of either " '1. [t]he actual functional demands and job duties of a particular past relevant job; or 2. [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy.' " Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1050 (10th Cir.1993)(quoting SSR 82-61, Soc. Sec. Rep. Serv., Rulings 1975-1982, at 836, 838 (West 1983))
 
 
 [4]
 While the Dictionary of Occupational Titles (DOT) might have provided useful, though not necessarily sufficient, information in this regard, see SSR 82-62, Soc. Sec. Rep. Serv., Rulings 1975-1982, at 811-12 (citing DOT as source of supplemental or corroborative information for step-four determination); see, e.g., Andrade, 985 F.2d at 1051-52, the ALJ only mentioned the DOT in connection with his broad (mis)characterization of the (sedentary) receptionist job as "light work," R. Vol. II at 24
 
 
 [5]
 Although not essential to our holding, it is important to correct the ALJ's misunderstanding that a medical record reviewer's RFC assessment "must be given the same probative weight that is given to any other piece of expert opinion evidence." R. Vol. II at 20. We have recognized for some time that such assessments are less probative than the findings of an examining physician, which are, in turn, accorded less weight than the opinions of the claimant's treating physician. See Ragland, 992 F.2d at 1058 n. 3 (discussing Gatson v. Bowen, 838 F.2d 442, 448 (10th Cir.1988), and Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir.1987))